Charles Capetanakis (CC 1120)
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, NY 10158
Phone: (212) 557-7200
Fax: (212) 286-1884
*Local Counsel for the Plaintiffs*

James Bopp, Jr. (JB 0781)*
Joe La Rue (JL 2423)*
BOPP, COLESON & BOSTROM
1 South 6th Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
*Lead Counsel for the Plaintiffs*
* Application for leave to appear pro hac vice for this case made by Motion on February 11, 2008 pursuant to Local Civil Rule 1.3(c).

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

**TOM OGNIBENE,** ***et al.,***

***Plaintiffs,***

**-against-**

**C.A. No. 08 CV 01335 (LTS) (TDK)**

**SCHWARZ,** ***et al.,***

***Defendants.***

---------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


Table of Authorities . . . . . . . . . . iv

Introduction . . . . . . . . . . 1

Facts . . . . . . . . . . 2

Questions Presented . . . . . . . . . . 7

Argument . . . . . . . . . . 7

I. Plaintiffs Raise a Valid Article III Claim That Is Fully Justiciable By This Court . . . . . . . . . . 7

A. Plaintiffs Have Standing To Bring Their Claims . . . . . . . . . . 7

1. Plaintiffs Have Suffered And Are Suffering An Injury In Fact . . . . . . . . . . 7

2. There Is A Causal Connection Between Plaintiffs' Injuries And The Conduct Complained Of . . . . . . . . . . 8

3. Plaintiffs' Injuries Will Be Redressed By A Favorable Decision . . . . . . . . . . 9

B. Plaintiffs' Claims Are Ripe . . . . . . . . . . 9

II. Plaintiffs Satisfy The Preliminary Injunction Requirements . . . . . . . . . . 9

A. Plaintiffs Are Likely To Succeed On The Merits . . . . . . . . . . 10

1. Section 3-703(1)(l) Of The Code Is Unconstitutional Both Facially And As Applied . . . . . . . . . . 11

a. Section 3-703(1)(l) Is Not Closely Drawn, But Is Overinclusive and Underinclusive . . . . . . . . . . 12

b. Section 3-703(1)(l) Is Unconstitutionally Overbroad . . . . . . . . . . 13

c. The Plaintiffs Are Likely To Succeed On The Merits . . . . . . . . . . 14

2. The Doing-Business Contribution Limits Are Unconstitutional Both Facially And As Applied . . . . . . . . . . 14

a. The Doing-Business Contribution Limits Are Not Closely Drawn, But Are Overinclusive And Underinclusive . . . . . . . . . . . . . . . . . 15

b. The Doing-Business Contribution Limits Are Overbroad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

c. The Doing-Business Contribution Limits Discriminate On The Basis of Viewpoint, In Violation of Both the First and Fourteenth Amendments . . . . . . . . . . . . . . . . . . . . . . . . . 16

d. The Doing-Business Contribution Limits Are Substantially The Same As Those Invalidated In *Randall v. Sorrell* . . . . . . . . . . . . . . . . . . . 17

e. The Plaintiffs Are Likely To Succeed On the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3. The Unmatchable Contributions Provision Is Unconstitutional Both Facially And As Applied . . . . . . . . . . . 18

a. The Unmatchable Contributions Provision Unconstitutionally Enhances the Speech of Some By Quieting The Speech of Others . . . . . . . . . . . . . . . . . 18

b. The Unmatchable Contributions Provision Is Both Overinclusive And Underinclusive . . . . . . . . . . . 19

c. The Unmatchable Contributions Provision Is Overbroad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

d. The Unmatchable Contributions Provision Impermissibly Discriminates On the Basis of Viewpoint . . . . . . . . . . . . . . . . . . . . . . . . 19

e. The Plaintiffs Are Likely To Succeed On the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B. In the Alternative, This Case Presents Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground For Litigation, and the Balance of Hardships Tips Decidedly in Favor of the Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1. This Case Presents Sufficiently Serious Questions Going to the Merits to Make Them A Fair Ground For Litigation . . . . 22

2. The Balance of Hardships Tips Decidedly In Favor of the Plaintiffs . . . . 23

C. Plaintiffs Have Suffered And Will Continue To Suffer Irreparable Harm Absent Injunctive Relief . . . . 23

Conclusion . . . . 25

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 . . . . . 9

*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990) . . . . . 11, 12, 14, 14 n.1, 22

*Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam) . . . . . 10, 12, 18, 22

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) . . . . . 14, 16

*Bronx Household of Faith v. Board of Educ. of New York*, 331 F.3d 342 (2d Cir. 2003) . . . . . 24

*California Prolife Council PAC v. Scully*, 989 F.Supp. 1282 (E.D. Cal. 1998) . . . . . 15

*California Prolife Council PAC v. Scully*, 164 F.3d 1189 (9th Cir. 1999) . . . . . 15

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) . . . . . 13

*Community School Board of Brooklyn v. New York School Dist. No. 18*, 482 F.2d 257 (2d. Cir. 1973) . . . . . 24

*Covino v. Patrissi*, 967 F.2d 73 (2d. Cir. 1992) . . . . . 24

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . 23

*FEC v. Massachusetts Citizens For Life, Inc.*, 479 U.S. 238 (1986) . . . . . 12

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006) . . . . . 7, 9

*Florida Star v. B. J. F.*, 491 U.S. 524 (1989) . . . . . 13

*Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411 (2d Cir. 2004) . . . . . 23

*Kamerling v. Massanari*, 295 F.3d 206 (2d. Cir. 2002) . . . . . 10

*Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384 (1993) . . . . . 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . 7, 9

*McConnell v. FEC*, 540 U.S. 93 (2003) . . . . . . . . . . 12

*Medical Society of the State of New York v. Toia*, 560 F.2d 535 (2d Cir. 1977) . . . . . . . . . . 21

*Mitchell v. Cuomo*, 748 F.2d 804 (2d. Cir. 1984) . . . . . . . . . . 24

*Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506 (2d Cir. 2005) . . . . . . . . . . 9

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000) . . . . . . . . . . 10, 17

*Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577 (2d Cir. 1989) . . . . . . . . . . 21

*Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972) . . . . . . . . . . 10, 16

*Pride v. Community School Bd. of Brooklyn, N.Y. Sch. D. No. 18*, 482 F.2d 257 (2d Cir. 1973) . . . . . . . . . . 11

*Randall v. Sorrell*, 126 S. Ct. 2479 (2006) . . . . . . . . . . 17-18

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) . . . . . . . . . . 13, 16, 19

*Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir. 1984) . . . . . . . . . . 25

*Roth v. United States*, 354 U.S. 476 (1957) . . . . . . . . . . 22

*Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995) . . . . . . . . . . 19, 20

*Shrink Missouri Government PAC v. Adams*, 151 F.3d 763 (8th Cir. 1998) . . . . . . . . . . 21, 23

*Thomas v. City of New York*, 143 F.3d 31, 35 (2d Cir. 1998) . . . . . . . . . . 9

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam) . . . . . . . . . . 10

*Wright v. Council of the City of Emporia*, 407 U.S. 451 (1972) . . . . . . . . . . 10

**Constitutional Provisions**

U.S. CONST., Art III . . . . . . . . . . 7-9

U.S. CONST., amend. I . . . . . . . . . . *passim*

U.S. CONST., amend. XIV . . . . . . . . . . *passim*

**New York City Administrative Code Sections**

Administrative Code, § 3-702(3) . . . . . . . . . . 1, 4, 6, 7, 8, 11, 18-20, 26

Administrative Code, § 3-702(16) . . . . . . . . . . 4

Administrative Code, § 3-702(18) . . . . . . . . . . 4

Administrative Code, § 3-702(20) . . . . . . . . . . 4, 5

Administrative Code, § 3-703(1)(f) . . . . . . . . . . 2, 3, 4, 14, 15

Administrative Code, § 3-703(1)(l) . . . . . . . . . . 1, 2, 3, 6, 7, 8, 11-14, 26

Administrative Code, § 3-703(1-a) . . . . . . . . . . 1, 3, 4, 5, 6, 7, 8, 11, 14-18, 26

Administrative Code, § 3-703(7) . . . . . . . . . . 3

Administrative Code, § 3-708 . . . . . . . . . . 2, 8

**Code of Federal Regulations**

11 C.F.R. pt. 110.1(g) . . . . . . . . . . 13

**Federal Register Citations**

64 Fed. Reg. 37,397 (July 12, 1999) . . . . . . . . . . 12-13

# Introduction

This litigation involves numerous constitutional and statutory challenges to various provisions of New York City's Administrative Code. A true and correct copy of the Amended Complaint is annexed to the accompanying Declaration of Charles Capetanakis, Esq. sworn to the 22nd day of April 2008 ("Capetanakis Dec.") at Exhibit "A". For purposes of this motion for preliminary injunctive relief, Plaintiffs focus on three provisions of the Code: Section 3-703(1)(l), which prohibits political contributions from limited liability companies, limited liability partnerships, and partnerships; Section 3-703(1-a), which imposes drastically reduced contribution limits for certain persons and entities defined as having business dealings with New York City ("the City"); and, Section 3-702(3), which excludes some contributions from being counted as 'matchable' for public financing purposes. Plaintiffs assert that these challenged provisions unconstitutionally burden their speech and associational rights under the First Amendment to the United States Constitution and their right to equal protection under the Fourteenth Amendment to the Constitution. A true and correct copy of the New York City Campaign Finance Act (the "Code"), containing the challenged provisions, is annexed to the Capetanakis Dec. at Exhibit "B". Plaintiffs assert there is no adequate governmental interest justifying the burden placed upon their rights by these challenged provisions.

In connection herewith, Plaintiffs also rely on the accompanying Capetanakis Dec., and the accompanying declarations of Sheila Andersen-Ricci (**"Andersen-Ricci Dec."**) dated April 10, 2008; Yvette Velazquez Bennett (**"Bennett Dec."**) dated April 10, 2008; Martin Dilan (**"Dilan Dec."**) dated April 14, 2008; Martina Franca Associates, LLC (**"MFA Dec."**) dated April 10, 2008; Tom Ognibene (**"Ognibene Dec."**) dated April 11, 2008; Robert Perez (**"Perez Dec."**) dated April 21, 2008; Fran Reiter (**"Reiter Dec."**) dated April 9, 2008; Reiter/begun Associates, LLC (**"R/B Dec."**) dated April 10, 2008; Michele Russo (**"Russo Dec."**) dated April 9, 2008; Marlene J. Tapper

(“**Tapper Dec.**”) dated April 10, 2008; and Viviana Vazquez-Hernandez (“**Vazquez-Hernandez Dec.**”) dated April 22, 2008.

## Facts

In 1988, New York City’s Campaign Finance Act (“the Act”) was enacted to regulate the processes of political fundraising and create a system of public financing. *See*, New York City Local Law No. 8 of 1988. The Act is codified at Chapter 46 of the New York City Charter and Title 3, Chapter 7 of the Code. Defendants Campaign Finance Board Chair Frederick A. O. Schwarz, Jr. and Board Members Dale C. Christensen, Jr., Joseph P. Parkes, S.J., Katheryn C. Patterson, and Mark S. Piazza (“Defendants”) are given authority to promulgate rules and regulations for administering the Campaign Finance Act, investigate all matters relating to its administration, and take all actions that are necessary and proper to enforce it. *See*, Code, § 3-708. These Defendants are being sued in their official capacity. *See*, Amended Complaint, at ¶ 26.

The Act in its current form prohibits contributions from limited liability companies, limited liability partnerships, partnerships, and corporations. The law states in pertinent part that candidates and their committees “must not accept, either directly or by transfer, any contribution, loan, guarantee, or other security for such loan from any corporation, limited liability company, limited liability partnership or partnership.” *See*, Code, § 3-703(1)(l). However, the Act allows for some exceptions: “[W]here a contribution is from a contributor whose name is followed by a professional designation including but not limited to ‘M.D.’, ‘Esq.’ and ‘C.P.A.’ the board shall not treat such contribution as coming from a corporation, limited liability company, limited liability partnership or partnership in the absence of further indicia that such contribution is from such an entity.” *See*, *Id.* The Act also allows for contributions from labor organizations. *See*, Code, § 3-703(1)(f).

Plaintiffs Martina Franca Associates, LLC and Reiter/Begun Associates, LLC (“**LLC**

**Plaintiffs**") are organized under applicable law as limited liability companies and have elected to be taxed as partnerships. *See*, MFA Dec., at ¶ 3; R/B Dec., at ¶ 3. They want to exercise their First Amendment rights by contributing to the candidate(s) of their choice and would do so but for the prohibition contained in Section 3-703(1)(l) of the Code. *See*, MFA Dec. at ¶ 4; R/B Dec. at ¶ 4.

The Act also creates two sets of contribution limits for those who want to contribute financially to a political campaign. Lower contribution limits apply to persons and entities who meet the Act's definition of "having business dealings with the city." *See*, Code, § 3-703(1-a) (**"Business-Dealings Contribution Limits"**). Higher contribution limits apply to everyone else. *See*, Code, § 3-703(1)(f) (**"Regular Contribution Limits"**). The Regular Contribution Limits are between ten and twelve times higher than the Business-Dealings Contribution Limits. For instance, under the Regular Contribution Limits a person may contribute up to four thousand five hundred ($4,500.00) dollars to a candidate for mayor, up to three thousand five hundred ($3,500.00) dollars to a candidate for borough president, and up to two thousand five hundred ($2,500.00) dollars to a candidate for city council. *See*, Code, § 3-703(1)(f). Under the Business-Dealings Contribution Limits, however, a person may only contribute up to four hundred ($400.00) dollars to a candidate for mayor, up to three hundred twenty ($320.00) dollars to a candidate for borough president, and up to two hundred fifty ($250.00) dollars to a candidate for city council. *See*, Code, § 3-703(1-a). Unlike the Regular Contribution Limits, the Business-Dealings Contribution Limits are not indexed for inflation. *See*, Code, § 3-703(7) (providing the Act's formula for adjusting maximum contribution limits).

"Business dealings with the city" means any relationship with the City or an affiliated agencies involving: (1) Contracts for goods, services or construction valued at or above one hundred thousand ($100,000.00) dollars; (2) Acquisitions or dispositions of real property; (3) Applications for approval for certain transactions involving office space, land-use plans, and zoning changes; (4) Concessions

and franchises greater than or equal to one hundred thousand ($100,000.00) dollars; (5) Grants with a value greater than or equal to one hundred thousand ($100,000.00) dollars; (6) Economic development agreements; (7) Contracts for the investment of pension funds; and (8) Lobbyists. *See*, Code, § 3-702(18).

The term 'lobbyist' includes"the spouse or domestic partner and unemancipated children of the lobbyist." *See*, Code, § 3-702(16). When an organization lobbies, 'lobbyist' includes "any officer or employee . . . who engages in lobbying activities of the organization or is employed in an organization's division that engages in lobbying activities of the organization and the spouse or domestic partner and unemancipated children of such officers or employers." *See*, Code, § 3-702(16).

The lower, Business-Dealings Contribution Limits apply to "an entity that has business dealings with the city, any chief executive officer, chief financial officer and/or chief operating officer of such entity or persons serving in an equivalent capacity, any person employed in a senior managerial capacity regarding such entity, or any person with an interest in such entity which exceeds ten percent of the entity." *See*, Code, §§ 3-702(20), 3-703(1-a). Those persons who fit within one of these categories may only contribute up to the lower, Business-Dealings Contribution Limits. *See*, Code, § 3-703(1-a). Unlike Regular Contributions, their contributions are not matchable from the Fund created by New York City for public financing purposes. *See*, Code, § 3-702(3).

Contributions from labor organizations and their officers and members are treated differently from others who engage in business dealings with the city. Labor organizations may contribute to candidates up to the higher, Regular Contribution Limits, as may their officers, employees, and members. *See*, Code, § 3-703(1)(f). The contributions from labor organizations' officers, employees and members are also fully matchable for public financing purposes. *See*, Code, § 3-702(3). Similarly, contributions from neighborhood, community, and similar associations are also not subject

to the lower, Business-Dealings Contribution Limits, even when they engage in activities defined as "having business dealings with the city." *See*, Code, § 3-702(20).

Plaintiffs Sheila Andersen-Ricci, Robert Perez, Fran Reiter, and Michele Russo (**"Business-Dealings Plaintiffs"**) intend to contribute to political campaigns in the upcoming election cycle. They want to contribute up to the Regular Contribution Limits but are prohibited from doing so by Section 3-703(1-a) of the Code. *See*, Andersen-Ricci Dec., at ¶ 3; Perez Dec., at ¶ 4; Reiter Dec., at ¶ 3; and Russo Dec., at ¶ 4. Plaintiffs Perez and Reiter are subject to the lower, Business-Dealings Contribution Limits by reason of their actual business dealings with the city. *See*, Perez Dec., at ¶¶ 1-3; Reiter Dec., at ¶ 1. Plaintiff Andersen-Ricci, however, is subject to the lower limits only because she is married to a lobbyist. *See*, Andersen-Ricci Dec., at ¶ 2). Likewise, Plaintiff Russo is subject to the lower limits because she is employed by a lobbyist as his secretary. *See*, Russo Dec., at ¶ 3.

Plaintiffs Yvette Velazquez Bennett, Martin Dilan, Viviana Vazquez-Hernandez, Tom Ognibene, and Marlene Tapper (the "**Candidate Plaintiffs**") have all run for office in New York City previously. *See*, Bennett Dec., at ¶ 2; Dilan Dec., at ¶ 2;; Ognibene Dec., at ¶ 3; Tapper Dec., at ¶ 2; Vazquez-Hernandez Dec., at ¶ 2. Plaintiffs Bennett, Tapper, and Vazquez-Hernandez would like to run again in 2009, but cannot so long as the challenged provisions are in place. *See*, Bennett Dec. ¶¶ 3, 7; Tapper Dec., at ¶¶ 3, 6; Vazquez-Hernandez Dec., at ¶¶ 3, 6. Plaintiff Ognibene intends to run for office again in 2009, and Plaintiff Dilan is considering such a run. *See*, Ognibene Dec., at ¶ 2; Dilan Dec., at ¶ 3. Both Ognibene and Dilan believe the challenged provisions impermissibly burden their speech, associational, and equal protection rights under the First and Fourteenth Amendments. *See*, Ognibene Dec., at ¶¶ 7-8; Dilan Dec., at ¶¶ 6-7. The Candidate Plaintiffs want to accept contributions from those having business dealings with the City at the higher, Regular Contribution Limit levels, but cannot because of Section 3-703(1-a) of the Code. They would also

like to accept contributions from limited liability companies, limited liability partnerships, and partnerships, but cannot because of Section 3-703(1)(l) of the Code. *See*, Bennett Dec., at ¶ 4; Dilan Dec., at ¶ 4; Ognibene Dec., at ¶ 4; Tapper Dec., at ¶ 4; Vazquez-Hernandez Dec., at ¶ 4. Plaintiffs Bennett, Dilan, Tapper, and Vazquez-Hernandez (the "**Participating Candidates**") would like the contributions from those with business dealings to count for matching purposes under the public financing scheme. *See*, Bennett Dec., at ¶ 4; Dilan Dec., at ¶ 4; Vazquez-Hernandez Dec., at ¶ 4; Tapper Dec., at ¶ 4. However, these types of contributions are not matchable. *See*, Code, § 3-702(3).

Candidate Plaintiffs expect that they would receive substantial support from those having business dealings with the City and from limited liability companies, limited liability partnerships, and partnerships (if such entities were allowed to contribute). *See*, Bennett Dec., at ¶ 5; Dilan Dec., at ¶ 5; Vazquez-Hernandez Dec., at ¶ 5; Ognibene Dec., at ¶ 5; Tapper Dec., at ¶ 5. Plaintiffs Bennett, Ognibene, and Vazquez-Hernandez believe it is unlikely that they will receive substantial support from labor organizations, which are not subject to the lower, Business-Dealings Contribution Limits. *See*, Bennett Dec., at ¶ 6; Ognibene Dec., at ¶ 6; Vazquez-Hernandez Dec., at ¶ 5.

As a result of Sections 3-702(3), 3-703(1)(l), and 3-703(1-a) of the Code, Plaintiffs will be deprived of their constitutional rights under the First and Fourteenth Amendments to the United States Constitution and will suffer irreparable harm; and, they have no adequate remedy at law. *See*, MFA Dec., at ¶¶ 6-7; R/B Dec., at ¶¶ 6-7; Andersen-Ricci Dec., at ¶¶ 5-6; Perez Dec., at ¶¶ 6-7; Reiter Dec., at ¶¶ 5-6; Russo Dec., at ¶¶ 6-7; Bennett Dec., at ¶¶ 8-9; Vazquez-Hernandez Dec., at ¶ 7; Tapper Dec., at ¶¶ 7-8; Ognibene Dec., at ¶¶ 7-8; Dilan Dec., at ¶¶ 6-7. Plaintiffs therefore respectfully move this Court to preliminarily enjoin the enforcement of these challenged provisions against Plaintiffs and all others similarly situated.

## Questions Presented

I. Whether Defendants should be preliminarily enjoined from enforcing the prohibition against contributions from limited liability companies, limited liability partnerships, and partnerships as decreed by Section 3-703(1)(l) of the Code.

II. Whether Defendants should be preliminarily enjoined from enforcing the lower Doing-Business Contribution Limits imposed by Section 3-703(1-a) of the Code.

III. Whether Defendants should be preliminarily enjoined from enforcing the prohibition against treating certain contributions as 'matchable' for public financing purposes under Section 3-702(3) of the Code.

## Argument

### I. PLAINTIFFS RAISE A VALID ARTICLE III CLAIM THAT IS FULLY JUSTICIABLE BY THIS COURT.

Plaintiffs raise valid Article III claims. They have standing to bring them, their claims are ripe, and abstention is not an issue. Their claims are therefore fit for review by this Court.

#### A. Plaintiffs Have Standing To Bring Their Claims.

To establish Article III standing:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be 'redressed by a favorable decision.'

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *see also Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006). Plaintiffs meet each of these elements and so have Article III standing to bring their claims.

##### 1. Plaintiffs Have Suffered And Are Suffering An Injury In Fact.

Plaintiffs have suffered and are suffering a concrete and particularized "injury in fact" because the challenged sections of the Code unconstitutionally burden their First Amendment rights of

speech and association and their Fourteenth Amendment rights of equal protection.

The LLC Plaintiffs want to make contributions to the candidate(s) of their choice, but are unconstitutionally prevented from doing so by Section 3-703(1)(l) of the Code. The Business-Dealings Plaintiffs want to exercise their speech and associational rights by making contributions to the candidate(s) of their choice at the level allowed other citizens, labor organizations, and neighborhood associations, but are unconstitutionally prevented from doing so by Section 3-703(1-a) of the Code. They also want their contributions to be matchable for public financing purposes, as are the contributions from other citizens, labor organizations, and neighborhood associations. However, their contributions are treated as unmatchable by Section 3-702(3) of the Code. The Candidate Plaintiffs want to solicit and accept contributions from those having business dealings with the city at the higher, Regular Contribution Limit levels, and have them treated as matchable for public financing purposes, but are unconstitutionally prevented from doing so by Sections 3-703(1-a) and 3-702(3) of the Code. The Candidate Plaintiffs would also like to solicit and accept contributions from limited liability companies, limited liability partnerships, and partnerships, but are unconstitutionally prevented from doing so by Section 3-703(1)(l) of the Code. Plaintiffs Bennett, Tapper, and Vazquez-Hernandez are unable to run for office so long as these limitations are in place. These unconstitutional limitations on their ability to raise funds impermissibly burden the Candidate Plaintiffs' political speech and association rights.

**2. There Is A Causal Connection Between Plaintiffs' Injuries And The Conduct Complained Of.**

There is also a causal connection between Plaintiffs' injuries and the Defendants' conduct. The Defendants are given authority to take all actions that are necessary and proper to enforce the Campaign Finance Act. *See*, Code, § 3-708. The injuries that the Plaintiffs have suffered and will continue to suffer are caused by the regulations which the Defendants are charged to enforce.

**3. Plaintiffs' Injuries Will Be Redressed By A Favorable Decision.**

Finally, Plaintiffs' claimed injury can be redressed by a favorable decision from this Court. By enjoining the Defendants from enforcing the offending provisions, these provisions will no longer unconstitutionally infringe on the Plaintiffs' rights of free speech, association, and equal protection.

Plaintiffs thus meet all three requirements for Article III standing under *Lujan* and *Field Day*.

**B. Plaintiffs' Claims Are Ripe.**

To determine whether a case is ripe, "two factors must be considered: (1) 'the hardship to the parties of withholding court consideration,' and (2) 'the fitness of the issues for judicial decision.'" *Thomas v. City of New York*, 143 F.3d 31, 35 (2d Cir. 1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

As explained herein, each of the Plaintiffs are harmed by the challenged provisions, and will continue to suffer harm if these provisions are not enjoined. Their injuries are not anchored in a hypothetical future event, but are actual, concrete, imminent, and on-going. Plaintiffs' claims are thus fit for judicial review and will result in substantial hardship if review of their claims is withheld. Consequently, Plaintiffs' claims are ripe for this Court's review.

**II. PLAINTIFFS SATISFY THE PRELIMINARY INJUNCTION REQUIREMENTS.**

Courts will grant preliminary injunctions when the moving party demonstrates:

> (1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) 'that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party.'

*Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal citations omitted)). Plaintiffs meet this standard; so, preliminary injunctive relief should be granted.

### A. Plaintiffs Are Likely To Succeed On The Merits

"[C]ontributions, in both charitable and political contexts, function as a general expression of support for the recipient and its views and, as such, *are speech entitled to protection under the First Amendment.*" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (emphasis added) (internal citations omitted). Limits upon contributions, therefore, burden First Amendment rights. When the government imposes contribution limits, they must be "closely drawn" to a "sufficiently important interest," or else they unconstitutionally abridge First Amendment freedoms. *See*, *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (per curiam). The only interest sufficiently important to justify limits on contributions to candidates and their campaigns is the interest in preventing real or apparent corruption from large contributions. *See*, *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 389 (2000) ("*Shrink PAC*"). The Court utilizes a two-part test for evaluating the government's corruption interest: (1) the contribution must be *large* enough to give rise to a legitimate suspicion of corruption; and (2) there must be a bona fide "suspicion that [the] large contributions are corrupt." *See*, *Shrink PAC*, 528 U.S. at 390–91.

Likewise, when the government differentiates among the speech of similarly situated individuals or entities, it must be able to state an appropriate interest which is suitably furthered by the differential treatment. *See*, *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). If it cannot do so, its differential treatment violates the Fourteenth Amendment's Equal Protection clause, *See*, *Id.*, whose purpose is to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (internal citations omitted). There is no need to demonstrate that there is a discriminatory *purpose* behind the challenged provisions. In Equal Protection contexts, "The existence of a permissible purpose cannot sustain an action that has an impermissible effect." *Wright v. Council*

*of the City of Emporia*, 407 U.S. 451, 462 (1972). Thus, "It is now well established that a plaintiff alleging unlawful discrimination in violation of the equal protection clause of the Fourteenth Amendment is not required to prove that a discriminatory motive preceded the unlawful effect." *Pride v. Community School Bd. of Brooklyn, N.Y. Sch. D. No. 18*, 482 F.2d 257, 265 (2d Cir. 1973).

In this case, all three challenged provisions fail constitutional scrutiny because they burden Plaintiffs' First Amendment rights without being "closely drawn" to any "sufficiently important" governmental interest. Rather, these provisions are overinclusive, underinclusive, and overbroad. Sections 3-703(1-a) and 3-702(3) of the Code also engage in viewpoint discrimination, in violation of both the First and Fourteenth Amendment. Because these unconstitutional burdens on political speech and association irreparably harm Plaintiffs, a preliminary injunction should be granted.

### 1. Section 3-703(1)(l) of the Code Is Unconstitutional Facially And As Applied.

The Supreme Court has recognized that "the compelling governmental interest in preventing corruption support[s] the restriction of the influence of political war chests funneled through the *corporate* form." *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 659 (1990) (internal citation omitted) (emphasis added). This is because state law grants corporations "special advantages," such as "favorable treatment of the accumulation and distribution of assets" which "enhance their ability to attract capital and deploy their resources." *Austin*, 494 U.S. at 658–59. The mere ability to accumulate wealth is not sufficient justification for restricting the ability of corporations to participate in the political process; rather, the justification comes from "the unique state-conferred corporate structure that facilitates the amassing of large treasuries." *Id.* at 660.

The LLC Plaintiffs have chosen to be taxed as partnerships. They want to contribute to the campaign(s) of the candidate(s) of their choice and would do so, but for Section 3-703(1)(l) of the Code. Similarly, the candidate Plaintiffs want to accept contributions from partnerships, limited

liability partnerships, and limited liability companies. They would do so, but for the prohibition found in Section 3-703(1)(l). The Defendants can offer no "sufficiently important interest" for prohibiting contributions from the LLC Plaintiffs. Even if there were such an interest, the law is not closely drawn to it. Rather, the prohibition against contributions from limited liability companies, limited liability partnerships, and partnerships is overinclusive, underinclusive, and overbroad.

**a. Section 3-703(1)(l) Is Not Closely Drawn, But Is Overinclusive and Underinclusive.**

This "unique state-conferred corporate structure" which the *Austin* Court found justified restrictions on the political speech of corporations is absent for partnerships, limited liability partnerships, and limited liability companies which have chosen to be taxed as partnerships. They are not provided with the same "special advantages" as corporations: They do not receive the same "favorable treatment of the accumulation and distribution of assets," nor do they have the same "state created advantages" that enable corporations "to play a dominant role in the Nation's economy, [and] also permit them to use 'resources amassed in the economic marketplace' to obtain 'an unfair advantage in political marketplace." *Austin*, 494 U.S. at 659 (quoting *FEC v. Massachusetts Citizens For Life, Inc.*, 479 U.S. 238, 257 (1986). The danger the Court recognized in *Austin* simply does not exist with regard to LLC Plaintiffs, partnerships, or limited liability partnerships. Since there is no such danger, the Defendants have no legitimate interest in prohibiting contributions from these types of business entities. Section 3-703(1)(l) is therefore not "closely drawn" to a "sufficiently important interest," as required in order to satisfy First Amendment scrutiny. *See, McConnell v. FEC*, 540 U.S. 93, 231 (2003); *Buckley* 424 U.S. at 25. Rather, it is overinclusive.

The Federal Election Commission has recognized the validity of the constitutional argument the LLC Plaintiffs make. They acknowledge that limited liability companies that choose to be taxed as partnerships do not enjoy "corporate advantages" such as "flexible merger rules, the avoidance

of personal income tax for LLC members, [and] preferential tax treatment on dividends received and deductions for corporate losses." Treatment of Limited Liability Companies Under the Federal Election Campaign Act, 64 Fed. Reg. 37,397 (July 12, 1999) (codified at 11 C.F.R. pt. 110.1(g)). Consequently, the FEC continues to allow partnerships, limited liability partnerships, and limited liability corporations that elect to be taxed as partnerships to make contributions to political campaigns, even though contributions from corporations are prohibited. *See*, *Id.* New York City, however, has unconstitutionally declared contributions from *all* of these entities out-of-bounds.

Section 3-703(1)(l) is also impermissibly underinclusive. When a regulation of First Amendment rights is underinclusive, such that it "leaves appreciable damage to that supposedly vital interest unprohibited," the law cannot pass constitutional muster. *See*, *Florida Star v. B. J. F.*, 491 U.S. 524, 541-42 (1989) (Scalia, J., concurring in the judgment). *See also Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) (holding that a restriction on speech was underinclusive and therefore unconstitutional); *City of Ladue v. Gilleo*, 512 U.S. 43 (1994) (same). Were Defendants really interested in avoiding corruption or the appearance of corruption, they would not exempt contributions from doctors, lawyers, and CPAs from scrutiny to determine whether their source is one of the prohibited business models. When a law is underinclusive like this, it makes belief that it is designed to serve the proffered anti-corruption interest "a challenge to the credulous," *See*, *Republican Party of Minnesota*, 536 U.S. at 780, because it diminishes "the credibility of the government's rationale for restricting speech in the first place." *City of LaDue*, 512 U.S. at 52.

**b. Section 3-703(1)(l) Is Unconstitutionally Overbroad.**

The prohibition on contributions imposed by Section 3-703(1)(l) is also overbroad because it unconstitutionally burdens substantially more associational and speech rights than are justified by the anti-corruption interest. First Amendment litigants need not demonstrate that a statute is

unconstitutional as applied to *them* in order to assert that it is unconstitutional as applied to *others not before the court.* "Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

Section 3-703(1)(l) of the Code sweeps within its ambit not only the speech of corporations, but also the speech of every partnership, limited liability partnership, and limited liability company—even those which choose to be taxed as partnerships. While *Austin* allows some restriction upon the speech of corporations,[1] *See*, *Austin*, 494 U.S. at 660, Defendants have restricted far more speech and association rights than is constitutionally permissible.

**c. The Plaintiffs Are Likely To Succeed On The Merits.**

Section 3-703(1)(l) is not closely drawn to a sufficiently important interest, but is overinclusive, underinclusive, and overbroad. Plaintiffs are therefore likely to succeed on the merits of their challenge to this section of the Code.

**2. The Doing-Business Contribution Limits Are Unconstitutional Both Facially And As Applied.**

Plaintiffs are also likely to succeed on the merits of their challenge to the lower Doing-Business Contribution Limits imposed by Section 3-703(1-a) of the Code. The Candidate Plaintiffs want to accept contributions from those having business dealings with the City up to the limits imposed by Section 3-703(1)(f). Plaintiffs Bennett, Tapper, and Vazquez-Hernandez have decided

1 Plaintiffs note here their objection to *Austin*'s allowance for the complete abrogation of corporations' speech and associational rights. Even where an actual showing of corruption or an actual appearance of corruption exists, Plaintiffs assert that there are less burdensome ways to remedy the problem than by abrogating the First Amendment rights of *every* corporation—including those which are innocent of any wrongdoing. Plaintiffs therefore note their belief that *Austin* was wrongly decided and should be reconsidered.

that they cannot run for office while the limits are in force, while Plaintiffs Ognibene and Dilan assert that the limits will impermissibly burden their ability to do so. The Business-Dealings Plaintiffs want to contribute up to the higher, Regular Contribution Limits applicable to all citizens of New York City except for them. They would contribute up to those levels, but for the lower, Business-Dealings Contribution Limits imposed on them by Section 7-703(1-a) of the Code. This provision is not closely drawn to a sufficiently important interest, but is overinclusive, underinclusive, and overbroad, and also impermissibly discriminates on the basis of viewpoint.

**a. The Doing-Business Contribution Limits Are Not Closely Drawn, But Are Overinclusive and Underinclusive.**

The city established the Regular Contribution Limits in Section 3-703(1)(f) of the Code in order to prevent corruption or the appearance of corruption. In doing so, the city declared its judgment that contributions below those limits are non-corrupting. The severely reduced Business-Dealings Contribution Limits are therefore *not needed* to combat corruption or the appearance of corruption, which is the only interest sufficiently important to justify contribution limits. *See, Shrink PAC*, 528 U.S. at 389. The Business-Dealings Contribution Limits are therefore not closely drawn. As the *California Prolife Council PAC* Court opined, and the Ninth Circuit Court of Appeals affirmed, where the government has "manifested its judgment that the higher limitations are not unacceptably corrupting, . . . . the lower limits are not closely drawn." *California Prolife Council PAC v. Scully*, 989 F.Supp. 1282, 1296 (E.D. Cal. 1998), *aff'd*, 164 F.3d 1189 (9th Cir. 1999).

Even if there were not higher contribution limits in place (rendering the lower limits impermissible), the lower Business-Dealings Contribution Limits would still fail constitutional scrutiny because they are overinclusive: They restrict far more contributions than can be justified by the governmental interest, including contributions from such people as secretaries of lobbyists and their family members. They also restrict the speech and associational rights of many persons and

entities who meet the definition of those who have business dealings with the city, yet who have never and would never give contributions in an attempt to secure a quid-pro-quo benefit. The City's anti-corruption interest cannot justify the restriction on these expressive rights.

The lower limits are also underinclusive because they fail to restrict contributions from other contributors, including labor organizations and neighborhood associations, even though they engage in the same types of activities and compete for the same types of contracts, grants, and concessions from the city as those individuals and entities which are subject to the lower limits. When a regulation is underinclusive, it makes belief that it is designed to serve the proffered anti-corruption interest "a challenge to the credulous." *See*, *Republican Party of Minnesota*, 536 U.S. at 780.

**b. The Doing-Business Contribution Limits Are Overbroad.**

The Doing-Business Contribution Limits are also unconstitutionally overbroad under *Broadrick* because they burden substantially more associational and speech rights than are justified by the corruption interest. These limits reach even the speech and associational rights of such people as far removed from business dealings with the City as the spouse of an employee of a lobbyist, the unemancipated children of the spouse of a lobbyist, and the unemancipated children of the spouse of an employee of a lobbyist, none of whom engage in business dealings with the city.

**c. The Doing-Business Contribution Limits Discriminate on the Basis of Viewpoint, In Violation of Both the First and Fourteenth Amendments.**

The Supreme Court correctly stated that "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Mosley*, 408 U.S. at 95. Likewise, differentiating between citizens on the basis of their viewpoint runs afoul of the Equal Protection Clause. *See*, *Id.* at 96.

The speech of neighborhood, community, and labor organizations has a significantly different

viewpoint than the speech of owners of businesses and members of management. They, however, are subject to the lower contribution limits, while these organizations and their officers are not. Defendants offer no appropriate interest which is suitably furthered by treating differently the speech of these various groups who engage in the same business-dealings activities. The only basis for making the distinction is the viewpoint of the speech of the various groups, which renders the distinction unconstitutional under both the First and Fourteenth Amendments.

**d. The Doing-Business Contribution Limits Are Substantially The Same As Those Invalidated In *Randall v. Sorrell.***

The lowest contribution limit ever upheld by the Supreme Court was a limit of one thousand seventy-five dollars ($1,075). *See*, *Randall v. Sorrell*, 126 S. Ct. 2479, 2494 (2006) (noting the limit which was upheld in *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000)). The Business-Dealings Contribution Limits of $400, $320, and $250 are thus substantially lower than the lowest limit the Court has ever found constitutional. Contributions at this level are not large enough to give rise to a "legitimate suspicion of corruption," as the Court explained in *Shrink PAC* is necessary in order to substantiate the government's corruption interest. *See*, *Shrink PAC*, 528 U.S. at 390–91.

The challenged limits are actually very similar to the limits that were invalidated in *Randall*. In that case, the issue was whether Vermont's contribution limits of $400 for governor, $300 for state senator, and $200 for state representative were constitutional. *See*, *Randall*, 126 S. Ct. at 2486. The Court noted that such low limits "are sufficiently low as to generate suspicion that they are not closely drawn," *Id.* at 2492, and held them unconstitutional. *See*, *Id.* at 2500. The Court found it significant that Vermont's limits were not indexed for inflation and declared, "A failure to index limits means that limits which are already suspiciously low will almost inevitably become too low over time." *Id.* at 2499. The Business-Dealings Contribution Limits suffer from the same defect: unlike the Regular Contribution Limits, they are not indexed for inflation.

**e. The Plaintiffs Are Likely To Succeed on the Merits**

The Business-Dealings Contribution Limits provided by Section 3-703(1-a) of the Code are not closely drawn to a sufficiently important interest, but are overinclusive, underinclusive, and overbroad. They also discriminate on the basis of viewpoint, in violation of both the First and Fourteenth Amendments, and are substantially similar to limits invalidated in *Randall v. Sorrell.* Plaintiffs are therefore likely to succeed on the merits of their challenge to this section of the Code.

**3. The Unmatchable Contributions Provision Is Unconstitutional Both Facially And As Applied.**

Plaintiffs are also likely to succeed on their challenge to the designation of some contributions as unmatchable by Section 3-702(3) of the Code. This provision impermissibly enhances the speech of some by quieting the speech of others. It is also underinclusive in its reach and overbroad in its scope. Finally, it unconstitutionally discriminates on the basis of the viewpoint of the contributor. Plaintiffs therefore are likely to prevail on the merits of their challenge.

**a. The Unmatchable Contribution Provision Unconstitutionally Enhances the Speech of Some By Quieting The Speech of Others.**

The Supreme Court noted that "the concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment." *Buckley*, 424 U.S. at 649. Defendants' decision to make the Business-Dealings Plaintiffs' contributions unmatchable does just that: it quiets their voices, while enhancing the relative voices of other contributors by matching their contributions. Defendants have no sufficiently important interest which can justify this decision to "reduce the voice" of the Business-Dealings Plaintiffs "to a whisper" as compared to other contributors' voices. *See*, *Randall*, 126 S. Ct. at 2498.

Defendants' decision to make contributions from persons or entities defined as having business dealings with the City unmatchable, while choosing to match contributions from labor unions'

officers, employees, and members, also enhances the political speech of candidates who are supported by unions by providing them with matching dollars, thereby helping them to 'shout' over the speech of candidates who are supported by business interests, such as the Candidate Plaintiffs.

**b. The Unmatchable Contribution Provision Is Both Overinclusive And Underinclusive.**

The challenged provision is also overinclusive because it designates more contributions as 'unmatchable' than any proffered interest could possibly justify. For instance, the contributions from the spouse of the secretary of a lobbyist are unmatchable, as are the contributions from an unemancipated child of that spouse from a previous relationship. Such limits cannot be justified by the City's anti-corruption interest. They are therefore not closely drawn.

Similarly, the law is also underinclusive because it allows the matching of contributions from the officers, members, and employees of labor organizations and neighborhood associations who engage in the very same types of activities as those that, when done by businesses, are deemed as 'business dealings with the city.' Such underinclusiveness is constitutionally impermissible. *See*, *Republican Party of Minnesota*, 536 U.S. at 780.

**c. The Unmatchable Contribution Provision is Overbroad.**

The prohibition against matching certain contributions imposed by Section 3-702(3) is also overbroad because it unconstitutionally burdens substantially more expressive rights than could possibly be justified. As already noted, it reaches even the contributions of employees of lobbyists and their family members, none of whom engage in lobbying activities.

**d. The Unmatchable Contribution Provision Impermissibly Discriminates on the Basis of Viewpoint.**

When the State opens a forum for speech, the State cannot discriminate on the basis of viewpoint. *See*, *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829–30

(1995); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 392–93 (1993). Although fora are often spatial, they may also be metaphysical, such as this case when the State awards money to assist or amplify speech. *See*, *Rosenberger*, 515 U.S. at 830.

By instituting the matching funds program, Defendants opened a metaphysical forum within which they must not discriminate on the basis of the message of the speaker. Yet, that is exactly what they do. The contributions from labor organizations' officers, employees, and members are fully matchable, even though they engage in the same types of activities as the owners of businesses, members of management, and employees whose contributions may not be matched. The only basis for making this distinction is the viewpoint of the groups.

**e. The Plaintiffs Are Likely To Succeed On The Merits.**

The Unmatchable Contribution Provision is not closely drawn to a sufficiently important interest, but is overinclusive, underinclusive, and overbroad. It also unconstitutionally discriminates on the basis of viewpoint. Plaintiffs are therefore likely to succeed on the merits of their challenge to Section 3-702(3) of the Code.

**B. In the Alternative, This Case Presents Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground for Litigation, and the Balance of Hardships Tips Decidedly in Favor of the Plaintiffs.**

In the unlikely event this Court decides that Plaintiffs have not demonstrated a likelihood of success on the merits with regard to one or more of the challenged provisions, Plaintiffs argue in the alternative that this case presents sufficiently serious questions going the merits to make them a fair ground for litigation, and the balance of hardships tips decidedly in Plaintiffs' favor. Thus, they should be granted injunctive relief.

Generally in the Second Circuit a petitioner must meet the heightened 'likelihood of success on the merits' standard when he seeks to enjoin government action taken in the public interest

pursuant to a statutory or regulatory scheme. *See*, *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989). The cases make plain that the reason for this requirement is the potential adverse affect to the public interest when the government is enjoined from enforcing laws designed to protect the public: "[W]here the grant of interim relief may adversely affect the public interest in a manner which cannot be compensated for by an injunction bond, the moving party must satisfy the more stringent part of the test by establish[ing] a probability of success on the merits." *Id.* (quoting *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977)).

In the case before this Court, however, no such adverse effect to the public interest will be created by enjoining enforcement of the challenged laws. When a court enjoins enforcement of contribution limitations, no harm occurs. *See*, *Shrink Missouri Government PAC v. Adams*, 151 F.3d 763, 765 (8th Cir. 1998) ("Concerning the question of substantial harm to other interested parties if an injunction is granted, we are unable to discern any such harm."). Enjoining the challenged provisions will merely restore contribution limits and matching fund eligibility to the pre-2008 state, which for years had been judged by New York city to be *good* for the public interest. However, failure to enjoin enforcement of contribution limits has the potential to harm the public interest by interfering with First Amendment freedoms. *See*, *Id.* (opining that "we believe the public interest in free political speech weighs heavily in favor of enjoining the challenged contribution limits pending this Court's final determination on the merits."). Thus, the rationale that normally requires that movants meet the heightened 'likelihood of success on the merits' requirement is actually reversed in the case before this Court: there is simply no danger that the public interest may be adversely affected by a grant of injunctive relief to the Plaintiffs, but there is such a danger if the Court fails to grant the requested relief. This Court should therefore consider whether Plaintiffs present sufficiently serious questions going to the merits to make them a fair ground for litigation; and, if

so, whether the balance of hardships tips decidedly in favor of the Plaintiffs. Because both these requirements are met, this Court should grant Plaintiffs' request for injunctive relief.

**1. This Case Presents Sufficiently Serious Questions Going to the Merits to Make Them A Fair Ground for Litigation.**

It is difficult to imagine issues that are more serious than the potential deprivation of First Amendment rights. This is especially true where, as in this case, the deprivation involves the right to engage in *political* speech and association. As the Supreme Court observed in *Buckley*, "The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley*, 424 U.S. at 14 (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

Plaintiffs complain that their First Amendment rights are unconstitutionally infringed upon by the challenged laws. The LLC Plaintiffs are prohibited from contributing at all to a candidate's campaign, even though the "special advantages" and "unique state conferred corporate structure" that might justify such a prohibition with respect to corporations are absent with respect to them, since they have elected to be taxed as partnerships. *See*, *Austin*, 494 U.S. at 658, 660. The Business-Dealings Plaintiffs are subjected to lower contribution limits than other contributors—even certain contributors, like labor organizations, who engage in the same types of business-dealings as themselves. Their contributions have also been declared unmatchable, even though the contributions from labor organizations' officers, employees, and members are fully matchable. The Candidate Plaintiffs are unconstitutionally prevented from accepting contributions they would like to accept and having them count for purposes of determining matching funds. For these reasons, Plaintiffs assert that their First and Fourteenth Amendment rights are unconstitutionally violated by the challenged provisions, and their case raises sufficiently serious questions going to the merits to make them a fair ground for litigation.

**2. The Balance of Hardships Tips Decidedly in Favor of the Plaintiffs.**

If preliminary injunctive relief is not granted, and the Court later finds that the challenged provisions impermissibly infringes upon Plaintiffs' constitutional rights, Plaintiffs will have suffered irreparable harm. There will be nothing this Court can do at that point to make things right again.

By contrast, if this Court grants preliminary injunctive relief and later finds that Plaintiffs were not deprived of their constitutional rights, the Defendants will not have suffered any real hardship. Rather, an order enjoining enforcement of contribution limits creates no harm to any interested party. *See*, *Shrink Missouri Government PAC v. Adams*, 151 F.3d 763, 765 (8th Cir. 1998). As the Court noted, "Concerning the question of substantial harm to other interested parties if an injunction is granted, we are unable to discern any such harm." *Id.* Instead, such an order "merely restores the situation that [previously] existed." *Id.* The Court correctly concluded, "[T]he public interest in free political speech weighs heavily in favor of enjoining the challenged contribution limits pending this Court's final determination on the merits." *Id.*

Thus, under either the 'likelihood of success on the merits' standard, or the more relaxed 'fair ground for litigation' standard, Plaintiffs meet their burden. If they can also show that they will suffer irreparable harm absent preliminary injunctive relief, their request for relief should be granted.

**C. Plaintiffs Have Suffered And Will Continue To Suffer Irreparable Harm Absent Injunctive Relief.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Second Circuit recognizes that "where a First Amendment right has been violated, the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied." *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004). In fact, "Where a plaintiff alleges injury from a rule or regulation that directly limits speech, *the irreparable nature of the harm may*

*be presumed.*" *Bronx Household of Faith v. Board of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003) (emphasis added).

In the case before this Court, the challenged provisions "directly limit speech." They restrict contributions from Business-Dealings Plaintiffs and prohibit contributions from LLC Plaintiffs. They prohibit matching the contributions from Business-Dealings Plaintiffs, even as they match the contributions from other citizens and organizations, such as labor unions, that engage in the same activities as Business-Dealings Plaintiffs. This has the effect of reducing the volume of Business-Dealings Plaintiffs' speech to a whisper. Finally, the challenged regulations, taken together, directly limit the speech of all the Candidate Plaintiffs. The challenged provisions thus "directly limit speech;" and, the "alleged deprivation of rights" is a direct result of the challenged provisions. Under Second Circuit precedent, this entitles Plaintiffs to a presumption of irreparable harm. *See*, *Bronx Household of Faith v. Board of Educ. of City of New York*, 331 F.3d 342 (2d Cir. 2003).

The violation of Plaintiffs' Fourteenth Amendment rights likewise meets the irreparable harm requirement for the issuance of preliminary injunctive relief. In an Equal Protection claim, a finding of harm is not an essential requisite for preliminary injunctive relief where "an invidious discrimination itself is shown." *See*, *Community School Board of Brooklyn v. New York School Dist. No. 18*, 482 F.2d 257, 269 (2d. Cir. 1973). Rather, petitioners who demonstrate that they face the deprivation of a "fundamental right" have "sufficiently demonstrated for preliminary injunction purposes that he may suffer irreparable harm arising from a possible deprivation of his constitutional rights." *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992). *See also*, *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

With regard to both the First and Fourteenth Amendment claims, Plaintiffs have no adequate

remedy at law and cannot wait until the end of trial to get relief. Thus, because Plaintiffs "will suffer irreparable harm in the interim—that is, harm that cannot be prevented or fully rectified by the final judgment after trial," the preliminary injunction should be granted. *See*, *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

## Conclusion

Plaintiffs meet the requirements for injunctive relief. They will suffer irreparable harm absent enjoinment of the challenged provisions, and they are likely to succeed on the merits of their claim. In the alternative, they meet the 'fair ground for litigation' standard. This Court should therefore answer each of the questions presented in the affirmative and grant Plaintiffs' request for preliminary injunctive relief to enjoin the enforcement of Sections 3-702(3), 3-703(1)(l), and 3-703(1-a) against Plaintiffs and all others similarly situated.

Dated: April 24, 2008

Respectfully Submitted,

/s/ Charles Capetanakis

Charles Capetanakis (CC 1120)
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, NY 10158
Phone: (212) 557-7200
Fax: (212) 286-1884
*Local Counsel for the Plaintiffs*

James Bopp, Jr. (JB 0781)*
Joe La Rue (JL 2423)*
BOPP, COLESON & BOSTROM
1 South 6th Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
*Lead Counsel for the Plaintiffs*

* Application for leave to appear pro hoc vice for this case made by Motion on February 11, 2008 pursuant to Local Civil Rule 1.3(c).

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing will be served on the Defendants via first class mail, postage pre-paid.

Dated: April 24, 2008

Respectfully Submitted,

/s/ Charles Capetanakis
Charles Capetanakis (CC 1120)
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, NY 10158
Phone: (212) 557-7200
Fax: (212) 286-1884
*Local Counsel for the Plaintiffs*

James Bopp, Jr. (JB 0781)*
Joe La Rue (JL 2423)*
BOPP, COLESON & BOSTROM
1 South 6th Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
*Lead Counsel for the Plaintiffs*

* Application for leave to appear pro hoc vice for this case made by Motion on February 11, 2008 pursuant to Local Civil Rule 1.3(c).