UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

TOM OGNIBENE, *et al.*,

                                        Plaintiffs,

                - against -

FREDERICK A. O. SCHWARTZ, JR., *et al.*,

                                        Defendants.

------------------------------------------------------------------------x

**DECLARATION OF**

**David Karnovsky**

08 CV 01335 (LTS) (TDK)

 

David Karnovsky, under penalty of perjury, declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

      1.  I am General Counsel at the Department of City Planning for the City of New York ("DCP"), the agency which pursuant to the City Charter provides staff assistance to the City Planning Commission.

      2.  This Declaration discusses the land use component of the definition of "business dealings with the City" in the Campaign Finance Act ("CFA"), as amended by Local Laws 34 and 67 of 2007.  Specifically, it discusses applications for land use approvals that are subject to the City's Uniform Land Use Review Procedure ("ULURP"), and zoning text amendments.[1]  This Declaration also discusses real property transactions involving City agencies, to the extent that these transactions are subject to ULURP approval, or are subject to

---

[1] The "business dealings" definition covers "any application for approval sought from the city of New York that has been certified pursuant to the provisions of section 197-c of the charter." Admin. Code § 3-702(18)(a)(iii).  Charter Section 197-c governs ULURP.  The "business dealings" definition also covers "any application for a zoning text amendment that has been certified pursuant to section 201 of the charter." Id.

review by the City Planning Commission ("CPC") under Section 195 of the City Charter. Certain individuals associated with entities that seek these land use approvals and engage in these transactions are subject to lower campaign contribution limits and cannot have their contributions matched during timeframes set forth in the law (as discussed below). The land use and real property provisions of the "business dealings" definition are scheduled to take effect on December 3, 2008.

3. Briefly, ULURP is a public review process that provides a means for participation by community boards, borough boards, borough presidents, the CPC, City Council members and the Mayor in decisions pertaining to the use, development or improvement of real property, including privately-sponsored development projects that typically involve significant financial investments. The so-called "doing business" restrictions apply to the covered land use applications for a relatively short timeframe, based on the timetables set forth under the City Charter. If a union applied for a land use approval under ULURP (or for a zoning text amendment under procedures similar to ULURP), its senior officials would be subject to the same contribution limits and non-matching of contributions that apply to officials from most other entities that apply for ULURP approvals or zoning text amendments. There is a narrow exception in the "business dealings" definition for rezoning applications by certain neighborhood associations, and also for any applications by owner-occupants of one, two, or three-family homes; these applications generally are not pursued for the business and financial reasons associated with other land use applications.

I.    **Land Use Matters Subject to ULURP Review**

4. ULURP is required for "applications by any person or agency for changes, approvals, contracts, consents, permits or authorization thereof, respecting the use,

development or improvement of real property subject to city regulation." Charter § 197-c(a). Specifically, ULURP applies to the following categories of land use actions, whether they are initiated by City agencies[2] or by private parties (section and chapter citations are to other provisions of the Charter):

> (1) Changes in the city map pursuant to section one hundred ninety-eight and section one hundred ninety-nine;
>
> (2) Maps of subdivisions or plattings of land into streets, avenues or public places pursuant to section two hundred two;
>
> (3) Designations of zoning districts under the zoning resolution, including conversion from one land use to another land use, pursuant to sections two hundred and two hundred one;
>
> (4) Special permits within the jurisdiction of the city planning commission under the zoning resolution, pursuant to sections two hundred and two hundred one;
>
> (5) Site selection for capital projects pursuant to section two hundred eighteen;
>
> (6) Revocable consents pursuant to section three hundred sixty-four, requests for proposals and other solicitations for franchises pursuant to section three hundred sixty-three, and major concessions as defined pursuant to section three hundred seventy-four;
>
> (7) Improvements in real property the costs of which are payable other than by the city pursuant to section two hundred twenty;
>
> (8) Housing and urban renewal plans and projects pursuant to city, state and federal housing laws;
>
> (9) Sanitary or waterfront land-fills pursuant to applicable charter provisions or other provisions of law;

---

[2] City agencies may seek rezoning or other land use approvals in order to further economic development, construct affordable housing, create parkland, or for other public purposes. Frequent City agency applicants include the Department of Housing Preservation and Development, the Department of Small Business Services, the Department of Parks and Recreation, as well as the Department of City Planning itself.

(10) Sale, lease (other than the lease of office space), exchange, or other disposition of the real property of the city, including the sale or lease of land under water pursuant to section sixteen hundred two, chapter fifteen, and other applicable provisions of law;

(11) Acquisition by the city of real property (other than the acquisition of office space for office use or a building for office use), including acquisition by purchase, condemnation, exchange or lease and including the acquisition of land under water pursuant to section sixteen hundred two, chapter fifteen, and other applicable provisions of law; and

(12) Such other matters involving the use, development or improvement of property as are proposed by the city planning commission and enacted by the council pursuant to local law.

Charter § 197-c(a); 62 R.C.N.Y. § 2-01(a)-(k), (n).

5.   ULURP review is frequently required for large-scale private developments that may involve significant amounts of investment.  Rezonings and special permits may be required, for example, in order to construct large residential or office towers, or to expand hospital and university complexes.

6.   A designation of a zoning district under the Zoning Resolution as described in § 197-c(a)(3) involves rezoning an area (changing the "zoning map") by changing the boundaries of a zoning district.  The Zoning Resolution sets forth regulations for different zoning districts, and maps showing where the rules apply.  These districts include different categories of residential, commercial and manufacturing districts, as well as "special purpose districts" in certain neighborhoods.  The restrictions for the particular district apply in any neighborhood that is assigned to that district; for example, an "R1" district has single-family detached housing, and an "M1" district is for light-manufacturing.  In each zoning district, certain categories of compatible uses ("use groups") are permitted.  Thus, a change in zoning map designation under ULURP changes the use, bulk, density or other restrictions applicable to the affected area.  Also, under the Zoning Resolution, the CPC has authority to grant

"special permits" (subject to ULURP review) for specific uses or modifications of height and setback or other restrictions that would not otherwise be allowed in a particular district, provided that certain criteria specified in the Zoning Resolution are met. Such special permits are subject to ULURP review pursuant to § 197-c(a)(4).

       7.  ULURP applications that were approved in the past year include, among others:

- an application by Columbia University to rezone 35 acres of land to allow for the expansion of Columbia's campus as well as mixed-use development and other changes in the Manhattanville section of West Harlem;

- a series of applications by West Street Development, LLC for special permits and other changes to facilitate development of a 63-story mixed-used commercial and residential building at 47-50 West Street in Lower Manhattan, including a 140 to 180 room hotel, approximately 300 residential condominiums, and ground floor retail space;

- applications by 400 Fifth Realty LLC and 401 Fifth LLC for special permits and other changes to facilitate development of a 57-story mixed use building at 400-404 Fifth Avenue in Midtown, that would include approximately 389 residential units and 200 hotel rooms, as well as 28,707 square feet of retail space; and

- applications by First Realty Company, LLC, for special permits, rezoning, and other approvals to facilitate the development of a large-scale mixed-use project at former Con Edison sites along First Avenue between East 38th Street and East 41st Street in Manhattan. The project would include six mostly residential towers with more than 3,000 dwelling units, one commercial tower with approximately 1.14 million square feet of space, a public plaza, and more than 70,000 square feet of retail space.

## II.        Overview of ULURP Process

### A.        The City Planning Commission, Community Boards and Borough Boards

8.  The CPC is comprised of 13 members, of whom seven (including the Chair) are appointed by the Mayor; five are appointed by the five borough presidents; and one is appointed by the public advocate.  Charter § 192(a).  All appointments except the Chair are subject to Council advice and consent.  Id.  Members other than the Chair serve for five-year terms.  Id.

9.  The City Planning Commission is charged with "the conduct of planning relating to the orderly growth, improvement and future development of the city, including adequate and appropriate resources for the housing, business, industry, transportation, distribution, recreation, culture, comfort, convenience, health and welfare of its population." Id. § 192(d).

10. New York City is divided into 59 community districts, each of which is represented by a community board.  Community boards consist of up to 50 persons who live or work in the district and are appointed by the Borough President to two-year terms.  Charter § 2800(a).  Half of the members are nominated by City Council members representing the district, and Council members also participate as non-voting members. Id.

11. Additionally, each of the five boroughs has a borough board.  Borough board members include the borough president, Council members and community board chairpersons from the borough, except that community board chairpersons only vote on matters relevant to their community districts.  Charter § 85(a).

**B.**      **Certification of Application**

12. Under ULURP, applicants for land use approvals must submit to the Department of City Planning ("DCP") an application and other required materials. Charter § 197-c(b); 62 R.C.N.Y. § 2-02(a)(1). If all required materials have been properly submitted, DCP must forward the materials to the affected borough president, community board and (when more than one community district is involved) borough board. Charter § 197-c(b); 62 R.C.N.Y. § 2-02(a)(2).

13. DCP must also begin a review to determine whether the application is complete in accordance with DCP rules. 62 R.C.N.Y. § 2-02(a)(3), (5). An application is "certified" when DCP determines that it is complete. Charter § 197-c(c); 62 R.C.N.Y. § 2-02(a)(5).

14. When DCP certifies an application, it must refer the application to the local community board or boards; the borough president; the borough board, if more than one community district is involved; and the City Council. 62 R.C.N.Y. § 2-02(b).

**C.**      **Community Board Review**

15. Once an application has been certified, within 60 days of receiving the application, the affected community board (or boards) must notify the public of the application; hold a hearing; and make a written recommendation to the CPC, the affected borough president, and, where appropriate, the borough board. Charter § 197-c(e), (f); 62 R.C.N.Y. § 2-03(a).

16. The community board may in some circumstances waive its right to hold a hearing and make a recommendation. Charter § 197-c(e)(2); 62 R.C.N.Y. § 2-03(b).

Additionally, if the community board fails to act on the application within the 60-day timeframe, it automatically proceeds to the next level of review.  Charter § 197-c(e), (f), (j).

**D.    Borough Board Review**

17. If the land at issue is located in two or more community districts, each community board's recommendation or waiver must also be filed with the affected borough board.  Charter § 197-c(f); 62 R.C.N.Y. § 2-03(f)(4).

18. The borough board may hold a public hearing and submit a written recommendation or waiver to the CPC within 30 days of when all affected community boards have filed a recommendation, or the time for them to make a recommendation has expired. Id. § 197-c(f); 62 R.C.N.Y. § 2-05(a).  If the borough board fails to act in this timeframe, the application proceeds to the next level of review.  Charter § 197-c(j).

**E.    Borough President Review**

19. Within 30 days of receiving recommendations or waivers from all affected community boards (or 30 days after the end of the community board's time to act), the borough president may make a written recommendation to the CPC or waive the right to make a recommendation.  Id. § 197-c(g); 62 R.C.N.Y. § 2-04.  If the borough president fails to act in this timeframe, the application proceeds to the next level of review.  Charter § 197-c(j).

**F.    CPC Review**

20. Within 60 days of the end of the time allowed for the borough president to file a recommendation or waiver with the CPC, and following a public hearing, the CPC must act on the application.  Charter § 197-c(h); 62 R.C.N.Y. § 2-06(a).  The CPC may approve the application, disapprove it, or approve it with modifications.  Charter § 197-c(h); 62 R.C.N.Y.

§ 2-06(a).  If the CPC fails to act in this timeframe, the application is, with limited exception, deemed denied.  Charter §§ 197-c(3), (4), (8), 197-c(j), 200(b).

21. Approval or approval with modifications generally requires the vote of at least 7 of the 13 CPC members.  Charter § 197-c(h); 62 R.C.N.Y. § 2-06(g)(2).

22. The CPC must file its decision with the City Council and the affected borough president, and provide the Council with copies of all recommendations.  Charter § 197-d(a); 62 R.C.N.Y. § 2-06(g)(4).

**G.  City Council Review**

23. Council review of a CPC approval decision or approval with modifications is required in matters concerning designations of zoning districts; zoning text amendments; housing and urban renewal plans and projects; and disposition of residential real property (other than to companies organized exclusively to develop low-income housing projects).  Id. §§ 197-c(3), (8), 197-d(b).

24.  Additionally, Council review is required if the CPC approves or approves with modification an application over contrary, timely submitted recommendations of both the affected community board and borough president, provided that the borough president files a written objection to the decision with the CPC and the Council within five days of receiving the decision.  Charter § 197-d(b)(2).

25. Council review is also required if a majority of Council members "call up" the application by voting to review a CPC decision to approve or approve with modifications within 20 days of the date the decision is filed.  Charter § 197-d(b)(3).

26. When the Council reviews an application, it must hold a public hearing and take action within 50 days.  A majority vote of all Council members is required in order to

approve, approve with modifications or disapprove the decision, except that if the Council fails to act the CPC's decision will be deemed approved. Charter § 197-d(c). If the Council proposes to approve the CPC decision with modifications, such proposed modifications must be filed with the CPC for a determination as to whether the modifications are of such significance that additional review of environmental issues or additional review pursuant to ULURP is required. If no additional review is required, the Council may thereafter approve the decision with the modifications. Charter § 197-d(d).

### H. Mayoral Review

27. The Council must file its decision with the Mayor. Charter § 197-d(e). The Council's action is final unless the Mayor files a written disapproval of the action within five days of receiving the filing, except that the Council may override the disapproval by two-thirds vote within 10 days of receiving the Mayor's filing. Id. § 197-d(e), (f). The Mayor may also make a written objection to a CPC approval decision that is not reviewed by the Council within five days of the expiration of the period for Council review, which is also subject to override by a two-thirds vote of the Council. Id. § 197-d(g).

### III.    Zoning Text Amendments

28. If a project requires changes to the regulations applicable within a particular zoning district, an application may be submitted for an amendment to the text of the Zoning Resolution. All of the land use projects listed in paragraph 7 above required zoning text amendments, in addition to ULURP approvals.

29. Under section 201 of the Charter, zoning text amendments may be submitted by a taxpayer, community board, borough board, borough president or the Mayor, or by the Land

Use Committee of the City Council if the application is supported by two-thirds of its members. Charter § 201.

30. Before taking action, the CPC must refer the application to the affected community boards or borough boards for a public hearing and recommendation. Charter § 201(a). Following the CPC review, the zoning text amendment is then reviewed and acted upon by the City Council in the same manner as for ULURP applications. Charter § 197-d(b)(1).

## IV.    "Doing Business" Provisions Concerning ULURP and Zoning Text Amendments

31. As discussed above, the "business dealings" definition generally includes ULURP applications and applications for zoning text amendments.[4]

32. The timeframe when ULURP transactions are considered "business dealings" for the purposes of the CFA is relatively short. In cases where the Council reviews the ULURP application, the application is only considered a "business dealing" from the time of certification until 120 days after the Council's action is filed with the Mayor or, in cases of Mayor disapproval of Council action, 120 days after the expiration of the period for a Council override. If there is no Council review, the application is considered a "business dealing" only from the time of certification until 140 days after the CPC decision is filed with the Council. Admin. Code § 3-702(18)(b)(iii). Because of the ULURP timeframes discussed above, the transaction would usually be considered a "business dealing" for less than a year. In the case of a zoning text amendment, the period of "doing business" begins from the time the application is referred for public review until 120 days after the Council's action is filed

---

[4] The definition also clarifies that "an applicant shall include a designated developer or sponsor of a project for which a city agency or local development corporation is the applicant." Admin. Code § 3-702(18)(a)(iii).

with the Mayor or, in cases of Mayoral disapproval of the Council action, 120 days after the expiration of the period for Council override.

33. There are two categories of ULURP or zoning text amendments applicants whose transactions are not covered by the "business dealings" definition, when seeking ULURP or zoning text amendments.

34. First, owner-occupants of one, two and three family homes are not considered applicants for the purpose of the land use provisions of the "business dealings" definition. Administrative Code § 3-702(18)(a)(iii).

35. Second, the doing business database does not include individuals from "a neighborhood, community or similar association consisting of local residents or homeowners organized on a non-profit basis," that has applied for rezoning of its local neighborhood. Admin. Code § 3-702(20); Charter §§ 197-c(a)(3). This is a limited exception that only applies to applications of this nature, and not to any other ULURP applications. DCP has received fewer than 20 of these applications in the past ten years.

36. Generally, the categories of applications that are excluded from the "business dealings" definition affect the applicants' residences and local neighborhoods and, unlike most other privately-sponsored land use applications, are not pursued for a business purpose.

37. If a union were a ULURP applicant (for example, if it sought zoning changes relating to its headquarters), the transaction would be treated as a "business dealing," and senior union officials would be subject to the lower contribution limits and non-matching provisions of the CFA.

## V.    Real Property Transactions

38. The "business dealings" definition also includes "any acquisition or disposition of real property (other than a public auction or competitive sealed bid transaction or the acquisition of property pursuant to the department of environmental protection watershed land acquisition program) with the city of New York or any agency or entity affiliated with the city of New York."  Ad. Code § 3-702(18)(a)(ii).

39. As noted above, when a City agency engages in the "[s]ale, lease (other than the lease of office space), exchange, or other disposition of the real property of the city," or when the City acquires real property other than "office space for office use or a building for office use," the land use implications of the transaction are subject to ULURP review. See Charter § 197-c(a)(10)-(11); 384(b)(5).

40. The "business dealing" definition also includes "any application for approval sought from the city of New York pursuant to the provisions of section 195 of the charter." Section 195 governs "acquisitions by the city of office space or existing buildings for office use, whether by purchase, condemnation, exchange or lease."[5]  Ad. Code § 3-702(18)(a)(iii).

41. Applications under section 195 must also be approved by the CPC.   The Department of Citywide Administrative Services, on behalf of the City agency involved, notifies DCP of the intended acquisition.  DCP must notify the local community board and all five borough presidents.  Charter § 195.  Within 30 days, the CPC must conduct a public hearing and approve or disapprove the acquisition, taking into account criteria for locating City facilities established by CPC in accordance with section 203 of the Charter.  Charter §§ 195, 203; see 62

---

[5] For leases for which the City is the lessee, the lessor of the office building or office space is considered an applicant and its officers are subject to the "doing business" restrictions.  Ad. Code § 3-702(18)(a)(iii).

R.C.N.Y. Appendix A.  The CPC must file any approval decision with the City Council, which may disapprove the acquisition by a two-thirds vote held within 20 days of the filing.  Charter § 195.

        42. If a union or neighborhood association were involved in a real property transaction that is covered under the CFA and is subject to ULURP or section 195 review, the transaction would be treated as a "business dealing," and the organization's senior officials would be subject to the lower contribution limits and non-matching provisions of the CFA.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      New York, New York
           August 4, 2008

                                               _____
                              David Karnovsky